

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X

TYREEK DAVIS; TASHA LICORISH-DAVIS, on behalf of N. BROWN, S. BROWN, I. DAVIS, A.M. DAVIS, and A.S. DAVIS,

                Plaintiffs,

    -against-

DEIRDRE ABRAMS; NOELLA YOUNG; DANA DUNN, SUPERVISOR; MALIKAH FOREMAN; CHRISANN JOSIAH; RHONDA JOHNSON; REBECCA MARCOMB; JEANNA (GINA) CAMBRIA; JERRY (JARROD) MCCAFFREY, C.E.O.; MERCY FIRST FOSTER CARE AGENCY; CHINI BALDWIN; TAMIKA MANIFOLD; THOMAS DUNBAR; PAUL MELBOURNE; MONICA V. BAEZ; CAMILLE TITUS; VICTOR (VIC) ZAPATA; KEISHA BAXTER; LINDEN ACS OFFICE; MARK LEWIS; RONALD RICHTER; JOHN MATTINGLY; NEW YORK CITY ADMINISTRATION FOR CHILDREN SERVICES; NYPD; OFFICER PEREZ; OFFICER JOHN DOE; 75TH PRECINCT NYPD; OFFICERS JOHN DOES 1-20; ILANA GRUEBEL, in equity, not for monetary, individually and in her official capacity; AMANDA E. WHITE, in equity, not for monetary; CITY OF NEW YORK; CHRISTINE WAER, Attorney for ACS; IRATCHKA YAMEOGO-WARNER, Law Guardian; ELAINE D. MCKNIGHT, 18B Lawyer,

                Defendants.

----------------------------------------------------------------- X

13-CV-1405 (ARR)

NOT FOR ELECTRONIC OR PRINT PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

      Plaintiffs Tyreek Davis ("Tyreek") and Tasha Licorish-Davis ("Tasha") (together, "plaintiffs"), appearing pro se, filed the instant complaint pursuant to 42 U.S.C. § 1983 on behalf of themselves and their five minor children. The action arises out of Family Court proceedings involving plaintiffs and their children, two of whom are Tasha's children by another father. Although it is extremely difficult to discern plaintiffs' claims from the complaint, a liberal

1

reading suggests that plaintiffs attempt to assert causes of action under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment. By order of this court, dated May 13, 2013, plaintiffs' minor children and a number of the defendants were dismissed from the case. Dkt. #5.

Presently before the Court are motions to dismiss submitted by the two sets of remaining defendants. The first motion is that of defendants associated with Mercy First Foster Care Agency ("Mercy First"): Deirdre Abrams, Noella Young, Dana Dunn, Malikah Foreman, Chrisann Josiah, and Jeanna Cambria (collectively, the "Mercy First Defendants"). The second motion is submitted on behalf of the defendants associated with the City of New York: Chini Baldwin, Thomas Dunbar, Tamika Manifold, Paul Melbourne, Victor Zapata, Ronald Richter, and the City of New York (collectively, the "City Defendants"). Both motions argue that the plaintiffs' action should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state a claim. For the reasons set forth below, both motions are granted.

## BACKGROUND

For purposes of this opinion, the court relies on the parties' familiarity with the full extent of the underlying facts and summarizes them in relevant part as succinctly as possible here. Although the allegations in plaintiffs' complaint in this court center on events taking place in August 2012, the court will also briefly provide some context for the allegations in the complaint.[1]

---

[1] In addition to relying on the facts gleaned from plaintiffs' complaint, the court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records for other judicial proceedings. See Hawkins v. Tyree, 483 B.R. 598, 599 n.3 (S.DN.Y. 2012); Ferrari v. Cnty. of Suffolk, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011); Colotone Liquidating Trust v. Bankers Trust N.Y. Corp., 243 B.R. 620, 622 n.2 (S.D.N.Y. 2000). Additionally, because defendants move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court may also consider any documents outside the pleadings relevant to determining whether subject matter jurisdiction exists. Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi,

In June 2011, one of plaintiffs' infant children, A.M. Davis, was scalded in a bathtub. Compl., Dkt. #1, ECF 12-14. As a result of this incident, New York City Administration for Children's Services ("ACS") instituted proceedings against plaintiffs in Kings County Family Court ("Family Court") for abuse and neglect, and the child A.M. Davis was removed from plaintiffs' custody pursuant to a June 13, 2011, order of the Family Court. See Temporary Order of Removal, June 13, 2011, Decl. of Jeffrey S. Dantowitz ("Dantowitz Decl."), Dkt. #40, Ex. A. Following this incident, plaintiffs' joint child, I. Davis, and Tasha's two children, N. Brown and S. Brown, were also removed pursuant to temporary removal orders, dated June 13, 2011, based on allegations of derivative neglect. Compl., ECF 14-15; Dantowitz Decl., Ex. B.; Mercy First Defs.' Exs., Dkt. #35, Ex. 1, ECF 4-7. I. Davis was placed in kinship foster care with Tyreek's mother. Compl., ECF 13.

Following these events, the Family Court issued a series of temporary removal and protection orders continuing the removal of A. Davis, I. Davis, S. Brown, and N. Brown from plaintiffs' custody and ordering plaintiffs not to interfere with their custody and care. Dkt. #35, Ex. 1, ECF 10-17, 19-36, 38-41. 44-50. By a Family Court Order of December 13, 2011, an application pursuant to New York Family Court Law § 1028 by Tasha for return of her children was denied. Id., ECF 42-43. Tasha appealed the denial to the Appellate Division of the New York Supreme Court. Dkt. #35, Ex. 2, ECF 24-33. Since that time, there have been ongoing permanency hearings related to the custody of those four children, and they remain in the custody and care of ACS.

Subsequently, Tasha gave birth to another child, plaintiffs' joint child A.S. Davis. The allegations in plaintiffs' complaint relate principally to the removal of A.S. Davis from their custody and control. Plaintiffs allege that, on August 1, 2012, ACS caseworkers Chini Baldwin

---

215 F.3d 247, 253 (2d Cir. 2000). In this case, that includes relevant records from the proceedings in Family Court.

and Paul Melbourne came to the home of Tyreek's mother while plaintiffs were present and requested to see A.S. Davis. Compl., ECF 12, 15. When Tyreek's mother refused them entry, they returned to the home accompanied by New York Police Department ("NYPD") officers and entered the home, where plaintiffs showed them the infant A.S. Davis. Id.

The next day, on August 2, 2012, ACS filed a petition in Family Court regarding the derivative neglect of A.S. Davis. Dantowitz Decl., Ex. C. Also on August 2, 2012, a Family Court judge issued a warrant commanding plaintiffs to produce A.S. Davis before the court. Id., Ex. D.

Plaintiffs allege that, on August 3, 2012, Tasha appeared in Family Court and was arrested and held at Rikers Island for ten days. Compl., ECF 12-13, 15. During her appearance in Family Court, Tasha refused to disclose the whereabouts of the infant A.S. Davis, who Tasha indicated was out of state with her father, and as a result was detained for contempt of court until August 10, 2012, when she was again found in contempt of court and her incarceration ordered to continue. Order, Aug. 10, 2012, Dantowitz Decl., Ex. E.

Also on August 3, 2012, plaintiffs allege that Mercy First caseworkers came to Tyreek's mother's home and removed the child I. Davis from her custody. Compl., ECF 13.

On August 10, 2012, NYPD officers and ACS caseworkers arrived at Tyreek's hotel room with a warrant for A.S. Davis and removed the infant child from Tyreek's custody. Id., ECF 13. That same day, the Family Court issued an order remanding A.S. Davis to the custody of ACS. Dantowitz Decl., Ex. F; Dkt. #35, Ex. 2, ECF 5-6, 10-11. Tasha was also released from jail on August 13, 2013. Compl., ECF 14, 16; Dkt. #35, Ex. 2, ECF 7.

On February 13, 2013, the Family Court issued a Decision and Order suspending plaintiffs' visitation with the children A.M. Davis, I. Davis, S. Brown, and N. Brown. Dkt. #35, Ex. 14, ECF 34-35. Tyreek appealed that order to the Appellate Division. Id., ECF 38-42.

At the present time, all children remain in the custody of ACS, with plaintiffs ordered not to interfere with their custody and care. This action is one of many initiated by plaintiffs alleging violations of their constitutional rights in connection with the removal of their children and the subsequent handling of the Family Court proceedings, as well as the handling of A.M. Davis's medical treatment for her scald burns. Although plaintiffs' rambling and ranting papers submitted in opposition to defendants' motions are difficult to follow, their complaint in this action appears to center on the events beginning in August 2012 that resulted in the removal of A.S. Davis from their custody. They allege that A.S. Davis was illegally removed from their custody and seek declaratory and injunctive relief as well as damages for pain and suffering. Compl., ECF 4.

## DISCUSSION

### A. Standard of Review under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); accord Fed. R. Civ. P. 12(b)(1). The plaintiff bringing the action bears the "burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." Makarova, 201 F.3d at 113; accord Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1148 (2013). In ruling on a motion to dismiss, the court must accept as true all material factual allegations in the plaintiff's complaint but need not draw inferences favorable to the party asserting jurisdiction. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir.

1998) ("[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."); see also J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." Makarova, 201 F.3d at 113; see also J.S. ex rel. N.S., 386 F.3d at 110; Robinson v. Gov't of Malaysia, 269 F.3d 133, 140-41 & n.6 (2d Cir. 2001). However, the court "may not rely on conclusory or hearsay statements contained in the affidavits." J.S. ex rel. N.S., 386 F.3d at 110.

B. **Standard of Review under Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Id. at 555-56; Freedom Holdings, Inc. v. Spitzer, 363 F.3d 149, 151 (2d Cir. 2004). Courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, it is well settled that pro se complaints are held to less stringent standards than pleadings drafted by attorneys, and the court is required to construe a plaintiff's pro se complaint liberally and to interpret it as raising the strongest arguments it suggests. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008). Pro se complaints must, nonetheless, contain sufficient factual allegations to meet the plausibility standard. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

## C. Jurisdiction under the *Rooker-Feldman* Doctrine

Both the City Defendants and the Mercy First Defendants argue that the court lacks subject matter jurisdiction over plaintiffs' action under the Rooker-Feldman doctrine, which denies federal district courts jurisdiction over actions "that are, in substance, appeals from state-court judgments." Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). Specifically, they argue that plaintiffs' action challenges the removal of their children, which was pursuant to a Family Court order that this court lacks jurisdiction to review. For the reasons to be explained, the court agrees with defendants and dismisses plaintiffs' claims pursuant to the Rooker-Feldman doctrine.[2]

The Rooker-Feldman doctrine, which takes its name from the two Supreme Court cases giving rise to it,[3] stems from Congress's grant of federal appellate jurisdiction over state-court judgments exclusively to the United States Supreme Court under 28 U.S.C. § 1257. See Hoblock, 422 F.3d at 83-85. In Exxon Mobil Corporation v. Saudi Basic Industries Corporation, the Supreme Court clarified that the doctrine applies narrowly in only those "cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. 280, 284 (2005).

Following Exxon Mobil, the Second Circuit outlined the requirements of those limited circumstances in which the doctrine would apply: (1) Plaintiff must have lost in state court; (2) the injuries of which plaintiff complains must have been caused by a state-court judgment; (3)

---

[2] To the extent that plaintiffs' complaint may be construed as also raising claims for false arrest and unlawful search, those claims will be addressed below.

[3] Those cases are Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

7

plaintiff must "invite district court review and rejection of [that] judgment"; and (4) the state-court judgment must have been "rendered before the district court proceedings commenced." Hoblock, 422 F.3d at 85 (alteration in original) (quoting Exxon Mobil, 544 U.S. at 284). "The first and fourth requirements are procedural, while the second and third are substantive." J.R. ex rel. Blanchard v. City of N.Y., No. 11-CV-841 (SLT)(MDG), 2012 WL 5932816, at *4 (E.D.N.Y. Nov. 27, 2012) (citing Hoblock, 422 F.2d at 285). Because the court finds that all four requirements are satisfied in plaintiffs' case, the court lacks subject matter jurisdiction over their claims.

1. *Procedural Requirements*

For the procedural requirements of Rooker-Feldman to be satisfied, plaintiffs must have lost in state court, and the state court judgment must have been rendered prior to commencement of proceedings in this court. The court finds that both procedural requirements are met here.

As to the first requirement, plaintiffs "lost" in state court when the Family Court issued orders removing the children from plaintiffs' custody---in particular, plaintiffs lost when the Family Court remanded A.S. Davis to ACS custody on August 10, 2012---and remanding them to the custody of ACS, where they remain. See Davis ex rel. Brown v. Baldwin, No. 12-CV-6422 (ER), slip op. at 5 (S.D.N.Y. Dec. 31, 2013) (finding that plaintiffs, who are the same plaintiffs in this case, "lost" in state court when A.M. Davis was placed in ACS custody); J.R. ex rel. Blanchard, 2012 WL 5932816, at *4-*5 (holding that plaintiff lost in state court when child temporarily removed under an order of disposition); Allen v. Mattingly, No. 10 CV 0667(SJF)(ARL), 2011 WL 1261103, at *8 (E.D.N.Y. Mar. 29, 2011) (holding that plaintiff lost in state court when plaintiff lost custody of her son pursuant to temporary and final Family Court orders); Bobrowsky v. Yonkers Courthouse, 777 F. Supp. 2d 692, 706 (S.D.N.Y. 2011) (finding

a protective order to be a final order for purposes of Rooker-Feldman); Phillips ex rel. Green v. City of N.Y., 453 F. Supp. 2d 690, 713-15 (S.D.N.Y. 2006) (finding that plaintiffs lost in state court when Family Court issued temporary order of removal granting custody of their children to ACS, despite the fact that removal proceedings were ongoing and subject to further factfinding); cf. Green v. Mattingly, 585 F.3d 97, 102 (2d Cir. 2009) (finding that plaintiff was not a state court loser where temporary order of custody was overturned and child returned within four days).

As to the fourth requirement, all of the relevant orders of removal and protection were issued prior to commencement of this suit on March 14, 2013.[4] Accordingly, both procedural requirements of Rooker-Feldman are met.

### 2. *Substantive Requirements*

In order for the substantive requirements of Rooker-Feldman to be satisfied, the injuries of which plaintiffs complain must have been caused by a state-court judgment, and plaintiffs' suit must invite this court to review and reject that judgment. These requirements are also satisfied here.

---

[4] It is unclear from the record before this court whether plaintiffs' appeals of various Family Court orders to the Appellate Division have been decided, but plaintiffs do not appear to have appealed the removal orders relating to the remand of A.S. Davis to ACS custody, which is the particular subject of this complaint. What is more, although there is some disagreement among the courts as to whether the Rooker-Feldman doctrine applies to bar federal review of a judgment with respect to which a state court appeal is still pending, this court finds compelling those cases holding that "[r]egardless of the status of any state court appeals, the litigant is still seeking federal review of a state-court judgment" and Rooker-Feldman applies. Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F. Supp. 2d 340, 348 (E.D.N.Y. 2010); see also Davis ex. rel. Brown v. Baldwin, slip op. at 7-8 (compiling case law regarding the two schools of thought). A rule preventing the application of Rooker-Feldman until all appeals become final "would allow a state court litigant to avoid Rooker-Feldman simply by filing the federal action while the state appeal is underway." Caldwell, 701 F. Supp. 2d at 348 (quoting Field Auto City, Inc. v. GMC, 476 F. Supp. 2d 545, 553 (E.D. Va. 2007)). Permitting federal review of a state court judgment while on appeal in state court would essentially gut the entire purpose of the doctrine.

As Judge Ramos noted in Davis ex. rel. Brown v. Baldwin, the Second Circuit has not directly addressed the issue but has suggested in a summary order that the doctrine would apply to bar federal review of a judgment for which a state court appeal is still pending. Slip op. at 7 n.5 (citing Swiatkowski v. New York, 160 F. App'x 30, 32 (2d Cir. 2005)). In Swiatkowski, the plaintiffs attempted to remove their case to federal court while an appeal "remained pending" in the state court, and the Second Circuit upheld the district judge's finding that Rooker-Feldman barred federal suit. 160 F. App'x at 32.

Regarding the first substantive factor, the state court judgment must itself be the cause from which plaintiffs' injuries resulted. The Rooker-Feldman doctrine does not bar a federal court from hearing a federal suit simply because plaintiffs previously litigated the same matter in state court or brought claims in state court based on the same facts or injuries. McKithen v. Brown, 481 F.3d 89, 98 (2d Cir. 2007).[5]

Although plaintiffs' meandering and rather difficult to follow complaint makes a number of various allegations against defendants, the principal injury of which plaintiffs complain is essentially the removal of their child, A.S. Davis, and the court finds that the removal was caused by the August 10 Family Court removal order and the orders of removal and protection remanding all of plaintiffs' children to ACS custody.[6] The fact that plaintiffs' allegations are couched as claims against the individual City Defendants and the Mercy First Defendants for their roles in effecting the removal of the children does not alter the analysis. See J.R. ex rel. Blanchard, 2012 WL 5932816, at *6 (finding it irrelevant whether plaintiffs couched their claim as one against individual actors effecting removal rather than as a request for review of a Family Court order). "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state court judgment and not simply ratified, acquiesced in, or left unpunished by it." Hoblock, 422 F.3d at 88. Although A.S. Davis may have been removed from plaintiffs' custody prior to the Family Court's issuance of a removal order,[7] the court agrees with the conclusion in J.R. ex rel.

---

[5] Nonetheless, principles of res judicata may operate to bar such a suit.
[6] To the extent that plaintiffs also submit a claim regarding the removal of I. Davis from the custody of Tyreek's mother in August 2012 as they describe in their complaint, they are not the appropriate plaintiffs with standing to bring that claim. What is more, the earlier removal of I. Davis from plaintiffs' custody in June 2011 resulted from an order of the Family Court, and the Rooker-Feldman doctrine applies equally to that custody determination. To the extent that plaintiffs complain of the handling of their children in ACS custody and foster care, that is also a result of the Family Court judgment remanding the children to the custody and care of ACS, and thus the Rooker-Feldman analysis equally applies to that claim as well.
[7] The court notes that, while a removal order appears to have been issued the same day as A.S. Davis's emergency

10

Blanchard that, even where emergency child custody removal precedes a court order, the removal order nonetheless causes (and not simply ratifies) the relevant injuries to the parents. 2012 WL 5932816, at *7. Without the Family Court's order, the children would have immediately been returned to plaintiff. See id. (citing N.Y. Family Court Act § 1026, which requires an agency to either return a child within twenty-four hours of emergency removal or file a petition seeking approval of the court by the following day). "[A]lthough intuitively it might seem that in a post-removal hearing, the Family Court merely 'ratifies' the alleged constitutional injury rather than causes it, here it makes more sense to conclude that the Family Court order did cause the claimed injury---i.e., the child custody removal---rather than merely affirm it. This is so because had the Family Court found otherwise . . . and not granted the removal order, [the child] would have had to have been returned" to the parents. Id. (internal quotation marks and citations omitted) (quoting Phillips ex rel. Green, 453 F. Supp. 2d at 717).

The court finds that plaintiffs' alleged injury was the result of a Family Court judgment ordering removal and remanding custody to ACS, and, in asking the court to find that plaintiffs' children were unlawfully removed, the plaintiffs are inherently asking this court to review and reject the Family Court's order. That is something that this court cannot do under Rooker-Feldman.

Because the court finds that it lacks subject matter jurisdiction under the Rooker-Feldman doctrine, it need not address the defendants' remaining grounds for dismissal. The court will, however, briefly address two independent claims that plaintiffs' complaint may be construed as attempting to raise.

---

removal from Tyreek's custody on August 10, 2012, a warrant was already in place from August 2 for the production of A.S. Davis.

### D. Plaintiffs' Other Claims

#### 1. *False Arrest and Imprisonment*

In plaintiffs' complaint, Tasha states that she was "illegally imprisoned" at Rikers Island in August 2012 when she was incarcerated for contempt of court. Compl., ECF 15. The court construes this as a Fourth Amendment claim for false arrest and imprisonment. Although plaintiffs' false arrest claim complains of an injury that is independent from the alleged injuries caused by the removal orders discussed above, it must nonetheless fail. To succeed on a § 1983 claim, a plaintiff must allege that each defendant was directly and personally involved in the purported unlawful conduct. E.g., Eagleston v. Guido, 41 F.3d 865, 872 (2d Cir. 1994); Lovanyak v. Cogdell, 955 F. Supp. 172, 174 (E.D.N.Y. 1996); Schmelzer v. Norfleet, 903 F. Supp. 632, 634 (S.D.N.Y. 1995); Herrera v. Scully, 815 F. Supp. 713, 722 (S.D.N.Y. 1993). Plaintiffs' allegations of false arrest relate solely to the conduct of Family Court Judge Ilana Gruebel, who plaintiffs allege "put [Tasha] in jail with no charges and no bail illegal imprisonment abuse of process to illegally seize [plaintiffs'] newborn outside of NY jurisdiction." Compl., ECF 15. Because Judge Gruebel was previously dismissed from the case under the doctrine of absolute immunity, Dkt. #5, at 5, and plaintiffs have not alleged facts indicating that any other defendant was responsible for Tasha's confinement, this claim fails.

#### 2. *Unlawful Search*

In their complaint, plaintiffs also allege that ACS caseworkers Chini Baldwin and Paul Melbourne, together with NYPD officers who are not defendants in this case, illegally entered Tyreek's mother's apartment without a warrant on August 1, 2012. Compl., ECF 12, 15. Their allegations may be construed as an attempt to assert a Fourth Amendment unlawful entry claim on behalf of Tyreek's mother. However, plaintiffs lack standing to assert such a claim.

"To have standing to object to an entry and search of a home under the Fourth Amendment, a plaintiff must show that he had a legitimate expectation of privacy in the place searched." Nieves v. N.Y.C. Police Dep't, 716 F. Supp. 2d 299, 307 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting United States v. Hamilton, 538 F.3d 162, 167 (2d Cir. 2008)). "This inquiry involves two distinct questions: first, whether the individual had a subjective expectation of privacy; and second, whether that expectation of privacy is one that society accepts as reasonable." Hamilton, 538 F.3d at 167. A litigant asserting Fourth Amendment standing "has the burden of establishing standing by a preponderance of the evidence," and the fact that a party is "legitimately on the premises" when a search or seizure occurs is not enough for Fourth Amendment purposes. United States v. Rush, 352 F. Supp. 2d 383, 385 (E.D.N.Y. 2005) (citing Rakas v. Illinois, 439 U.S. 128, 142-43 (1978)).

Plaintiffs have asserted no facts indicating that they had a reasonable expectation of privacy in Tyreek's mother's apartment while visiting there. There is nothing to indicate that they were more than mere visitors. They did not live in the apartment and were not even overnight guests. The complaint states that plaintiffs were staying at a hotel. Compl., ECF 12. A lawful visitor to private premises may have standing to assert a Fourth Amendment challenge to the admission against him of evidence seized during a search of someone else's premises where he is staying. See Rakas, 439 U.S. at 142. A person may have standing to assert a Fourth Amendment claim for a search of a place where he is an overnight guest, Minnesota v. Olson, 495 U.S. 91, 97-98 (1990). However, "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." Minnesota v. Carter, 525 U.S. 83, 90 (1998); see also United States v. Russell, 501 F. App'x 67, 70 (2d Cir. 2012) (summary order) (finding defendant lacked standing to challenge

search of his father's home because he did not "establish a personal expectation of privacy there"); United States v. Sanchez, 419 F. App'x 27, 31 (2d Cir. 2011) (summary order) (finding defendant's admission that he did not live in ex-girlfriend's apartment, had no control or authority over it, and could not enter without her permission was a disclaimer of any expectation of privacy there); United States v. Jimenez, 789 F.2d 167, 170 (2d Cir. 1986) (finding defendant lacked expectation of privacy in apartment where he had "occasional access" and could obtain a key upon specific request of the owner but had to return it after his use); United States v. Brown, 596 F. Supp. 2d 611, 629 (E.D.N.Y. 2009) (finding "invited guest" had no expectation of privacy in home where he was a social visitor and did not stay overnight). Accordingly, plaintiffs lack standing to challenge the alleged unlawful entry to Tyreek's mother's apartment, and this claim against defendants Baldwin and Melbourne must be dismissed.[8]

---

[8] To the extent that plaintiffs also attempt to assert an unlawful search claim related to police and certain defendants entering plaintiffs' hotel room and removing A.S. Davis on August 10, 2012, that claim fails because the entry was pursuant to a court-issued warrant for A.S. Davis.

## CONCLUSION

For the reasons set forth above, the motions to dismiss of both the Mercy First Defendants and the City Defendants are granted, and the action is therefore dismissed.[9] The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

/S/ Judge Allyne R. Ross
Allyne R. Ross
United States District Judge

Dated:    January 23, 2014
          Brooklyn, New York

---

[9] Although plaintiffs have not explicitly requested leave to amend their complaint should defendants' motions be granted, the court nonetheless recognizes that it "generally should not dismiss a pro se complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Vansertima v. Dep't of Corr., No. 10 CV 3214 (RJD)(RER), 2012 WL 4503412, at *7 (E.D.N.Y. Sept. 28, 2012) (citing Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002)). However, leave to amend need not be given where it is clear that amendment would be futile. E.g., Hill v. Curcione, 657 F.3d 116, 123-24 (2d Cir. 2011); Xiang Li v. Morrisville State Coll., 434 F. App'x 34, 35 (2d Cir. 2011). An amendment would be futile if, even when better pleaded, the claim would not survive a motion to dismiss. See, e.g., Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002); Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). Because plaintiffs' claims are principally barred by the Rooker-Feldman doctrine or are ones for which they otherwise lack standing, it is clear that amendment would be futile.

**SERVICE LIST**

**Tyreek Davis**
P.O. Box 4352
Richmond, VA 23220

**Tasha Licorish-Davis**
P.O. Box 4352
Richmond, VA 23220